UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-81027-Middlebrooks/Matthewman

DALIA A. DIPPOLITO,

    Petitioner,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

    Respondent.

_____/

FILED BY____SW____D.C.

Apr 22, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S PETITION UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY PURSUANT TO A STATE COURT JUDGMENT [DE 1]

THIS CAUSE is before the Court upon Petitioner Dalia Dippolito's ("Petitioner") Petition under 28 U.S.C. § 2254 by a Person in State Court Custody Pursuant to a State Court Judgment ("Petition") [DE 1]. The matter was referred to the undersigned United States Magistrate Judge by the Honorable Donald M. Middlebrooks, United States District Judge. *See* DE 8. Respondent, the Florida Department of Corrections ("Respondent"), has filed a response to the Petition [DE 14], an appendix [DE 14], and transcripts [DE 15]. Petitioner filed a reply [DE 16]. The Court has reviewed and carefully considered the Petition, the response, the reply, the exhibits, the transcripts, and all pertinent portions of the underlying criminal file.

## I.    BACKGROUND

### A.  Factual Background

The facts are summarized as follows. On July 31, 2009, Mohamed Shihadeh, Petitioner's lover, contacted the Boynton Beach Police Department ("BBPD"). [DE 4-1 at 1]. Mr. Shihadeh was concerned because he thought Petitioner had approached people about killing her husband. *Id.*

at 2. Mr. Shihadeh then served as a confidential informant for the BBPD. *Id.* at 2–3. Petitioner claims that Mr. Shihadeh was pressured to participate in the investigation against her. *Id.* at 2–3. Petitioner asserts this pressure by the BBPD was exacerbated by the COPS television show set to film the BBPD. *Id.* at 4.

During a recorded meeting, Mr. Shihadeh and Petitioner discussed the possibility of hiring a hitman to kill her husband. *Id.* at 5. Thereafter, Petitioner gave Mr. Shihadeh $1,200. *Id.* Mr. Shihadeh and Petitioner then met with an undercover police officer posing as a hitman. *Id.* Respondent asserts that Petitioner then "contracted to pay the hit man to shoot her husband." [DE 14 at 2]. Petitioner states that the video evidence from the meeting with the undercover officer provided the basis for her prosecution. [DE 4-1 at 6].

Next, the BBPD staged a crime scene, which the COPS television show filmed. *Id.* Petitioner was taken to this staged crime scene and was informed that her husband had been killed. *Id.* Her husband was, in fact, still alive. Petitioner continuously argued that the actions of the BBPD constituted objective entrapment. *Id.* at 7–10.

### B.  Procedural Background

This case originated in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (case number 2009CF009771AMB). [DE 14-2, Ex. 1]. Petitioner was charged on September 3, 2009, by information with solicitation to commit first degree murder with a firearm in violation of sections 777.04(2), 782.04(1)(a)(1) and 782.04(1)(a)(2), Florida statutes. *Id.*

Petitioner's relevant judgment came after a third jury trial. Petitioner was initially adjudicated guilty of solicitation to commit first degree murder on June 21, 2011. [DE 14-2, Ex. 2]. Petitioner successfully challenged her judgment and sentence and was granted a new trial due

to a jury selection error. *See Dippolito v. State*, 143 So. 3d 1080 (Fla. 4th DCA 2014); [DE 14-2, Ex. 3].

On remand, Petitioner filed a Motion to Dismiss [DE 14-2, Ex. 4] which was denied. [DE 14-2, Ex. 7]. Petitioner then filed a Petition for Writ of Prohibition in the Fourth District Court of Appeal [DE 14-2, Ex. 8] which was dismissed. [DE 14-2, Ex. 11]. Petitioner then filed the same petition in the Florida Supreme Court [DE 14-2, Ex. 12] which was denied as successive. [DE 14-2, Ex. 13].

Upon return to the trial court for a second time, Petitioner filed an Amended Motion to Suppress All Audio and Video Recordings Between Mohamed Shihadeh and Dalia Dippolito. [DE 14-2, Ex. 14]. She also filed a Motion to Strike Jury and for a Mistrial and for Change of Venue [DE 14-2, Ex. 15] and a Memorandum of Law in Support of Object Entrapment as an Affirmative Defense and Proposed Jury Instruction on Objective Entrapment [DE 14-2, Ex. 16]. Petitioner's second jury trial ended with a mistrial as the jury was unable to reach a unanimous vote. [DE 14-2, Exs. 17, 18].

Before Petitioner's third jury trial, she filed an Unopposed Motion *in Limine* to Exclude Evidence of Defendant's Alleged Attempt to Poison Michael Dippolito [DE 14-3, Ex. 19] and an Amended Motion to Suppress All Audio and Video Recordings [DE 14-3, Ex. 20].

During Petitioner's third trial, she filed a Motion to Remove Juror for Sleeping and Replace with Alternate Juror [DE 14-3, Ex. 21] and a Motion to Permit the Defendant to Argue Objective Entrapment as an Affirmative Defense and Request for Special Jury Instruction [DE 14-3, Ex. 22]. The jury found Petitioner guilty of solicitation to commit first degree murder on June 16, 2017. [DE 14-3, Ex. 26]. Petitioner was then adjudicated guilty of solicitation to commit first degree murder. [DE 14-3, Ex. 34].

Petitioner then filed a Motion to Permit Jury Interviews and a Motion for New Trial. [DE 14-3, Ex. 28]. The trial court issued a written order denying this motion. [DE 14-3, Ex. 30]. Petitioner then filed a Motion for Rehearing on Motion to Permit Jury Interviews and Motion for New Trial. [DE 14-3, Ex. 31]. The trial court also issued a written order denying this motion. [DE 14-3, Ex. 32].

Then, Petitioner filed a direct appeal of her judgment and sentence to the Fourth District Court of Appeal. [DE 14-3, Exs. 33, 35].[1] The Fourth District Court of Appeal affirmed Petitioner's conviction and sentence. *See Dippolito v. State*, 275 So. 3d 653 (Fla. 4th DCA 2019); [DE 14-4, Ex. 40].

Next, Petitioner filed a Notice for Discretionary Review in the Florida Supreme Court. [DE 14-4, Ex. 41]. However, the Florida Supreme Court declined to accept jurisdiction. *See Dippolito v. State*, SC19-1139, 2019 WL 4187552 (Fla. Sept. 4, 2019); [DE 14-4, Ex. 45].

Then, Petitioner petitioned the United States Supreme Court for a writ of certiorari. [DE 14-4, Ex. 46].[2] The United States Supreme Court denied review. [DE 14-4, Ex. 48].

Next, Petitioner filed a petition in the Fourth District Court of Appeal alleging ineffective assistance of appellate counsel.[3] [DE 14-4, Ex. 49]. The Fourth District Court of Appeal denied

---

[1] On direct appeal, Petitioner raised four arguments: 1) the trial court erred when it allowed the State to introduce the allegation that Petitioner attempted to poison her husband; 2) the egregious conduct of law enforcement constituted objective entrapment; 3) the trial court violated Petitioner's due process right to present her objective entrapment theory of defense to the jury; and 4) the trial court erred when it allowed the jury to consider unsubstantiated and inadmissible prior bad acts. [DE 14-3, Ex. 35].

[2] Petitioner presented the following issue: "where state law recognizes objective entrapment as a complete defense to criminal liability, and the defense turns on disputed issues of fact, does removing the defense from the province of the jury deprive a defendant of due process and violate the right to trial by jury?" [DE 14-4, Ex. 46].

[3] Petitioner asserted four grounds arguing that appellate counsel was ineffective on direct appeal by failing to argue the following: 1) that the trial court abused its discretion by permitting the State to use peremptory strikes on three African American prospective jurors and a Hispanic juror, where the record refutes the State's assertion of genuineness; 2) that the trial court abused its discretion by failing to replace a sleeping juror, or at the least, conduct/permit an investigation into juror misconduct; 3) that the trial court erred by denying Petitioner's motion to suppress based on Florida's wiretap statute; and 4) that the State's improper comments in closing argument deprived Petitioner of a fair trial. [DE 14-4, Ex. 49].

this petition without comment. [DE 14-4, Ex. 52].

Then, Petitioner filed in the trial court a Motion for Postconviction Relief under Florida Rule of Criminal Procedure 3.850. [DE 14-4, Ex. 53].[4] The trial court adopted the State's response to Petitioner's Rule 3.850 motion [DE 14-4, Ex. 54] and denied Petitioner's Rule 3.850 motion. [DE 14-4, Ex. 55].

Lastly, Petitioner appealed the denial of her Rule 3.850 motion to the Fourth District Court of Appeal.[5] [DE 14-4, Exs. 56, 57]. The Fourth District Court of Appeal affirmed without comment. [DE 14-4, Ex. 58].

Now Petitioner petitions this Court for a writ of habeas corpus. [DE 1]. Petitioner seeks relief on ten different grounds: 1) the trial court violated Petitioner's due process rights by denying her request to present her objective entrapment theory of defense to the jury; 2) defense counsel was ineffective by opening the door for the State to introduce evidence that Petitioner previously attempted to poison her husband; 3) defense counsel was ineffective by failing to request a limiting instruction after the trial court ruled that the State could introduce for impeachment purposes the allegation that Petitioner previously attempted to poison her husband; 4) defense counsel was ineffective by failing to call forensic examiners and investigators that searched Petitioner's computer and found no evidence that she searched the internet for ways to poison her husband or any other evidence to substantiate the poisoning allegations; 5) defense counsel was ineffective

---

[4] In this state court motion, Petitioner raised the following ineffective assistance of counsel claims: 1) defense counsel was ineffective by opening the door for the State to introduce evidence that Petitioner previously attempted to poison her husband; 2) defense counsel was ineffective by failing to request a limiting instruction after the trial court ruled that the State could introduce for impeachment purposes the allegation that Petitioner previously attempted to poison her husband; 3) defense counsel was ineffective by failing to call forensic examiners and investigators that searched Petitioner's computer and found no evidence that she searched the internet for ways to poison her husband or any other evidence to substantiate the poisoning allegation; 4) defense counsel was ineffective by failing to object to the State's improper comment made during closing argument; and 5) the cumulative effect of defense counsel's errors constitute ineffective assistance of counsel. [DE 14-4, Ex. 53].
[5] Petitioner elected to file the optional brief on appeal and raised all the same grounds raised in her Rule 3.850 motion. [DE 14-4, Ex. 57].

for failing to object to an improper comment made by the State during closing argument; 6) the cumulative effect of defense counsel's errors resulted ineffective assistance of counsel; 7) appellate counsel was ineffective by failing to argue on direct appeal that the trial court abused its discretion by permitting the State to use peremptory strikes on three African American prospective jurors and a Hispanic prospective juror, where the record refutes the State's assertion of genuineness; 8) appellate counsel was ineffective by failing to argue on direct appeal that the trial court abused its discretion by failing to replace a sleeping juror or, at the least, conduct/permit an investigation into juror misconduct; 9) appellate counsel was ineffective by failing to argue on direct appeal that the trial court erred by denying Petitioner's motion to suppress based on Florida's wiretap statute; and 10) appellate counsel provided ineffective assistance of counsel by failing to argue that the State's improper comment made during closing argument deprived Petitioner of a fair trial. *See* DE 4-1.

## I.     LEGAL STANDARDS

### A.  Standard of Review Under 28 U.S.C. § 2254

Under 28 U.S.C. § 2254(d), an individual in state custody is entitled to federal habeas corpus relief only on the ground that he is in custody in violation of the United States Constitution or laws or treaties of the United States. To obtain habeas corpus relief from a federal court, a prisoner must demonstrate that the state court's ruling on the claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)–(2) (2018); *see also Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215–16 (11th Cir. 2001).

"A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in this Court's cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405–06. "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies such precedents to the facts in an objectively unreasonable manner." *Id.* In the context of habeas petitions, "clearly established Federal law" refers to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). Federal courts are required to presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The Supreme Court repeatedly has held that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). State court decisions must be given a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily. *See Richter*, 560 U.S. at 96–100; *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

**B. Exhaustion**

Under 28 U.S.C. § 2254(b)–(c), petitioners are required to exhaust their claims by fairly presenting them to the state courts for adjudication before presenting them in a federal habeas petition. When petitioners do not properly present their claims, exhaust their claims, and comply with the applicable state procedure, § 2254 may bar federal review of those claims in federal court.

*See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing 28 U.S.C. § 2254(b)–(c)).

> Before filing a federal habeas action, a state prisoner must exhaust state court remedies, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

> Generally, procedural default can arise in two ways: (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) when the petitioner never raised the claim in state court, and it is obvious that the state courts would hold it to be procedurally barred if it were raised now. Federal habeas courts are precluded from deciding the merits of a claim that is procedurally barred, except in two circumstances: (1) where the petitioner makes a showing of adequate cause and actual prejudice, or (2) where the failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 749–50, 111 S. Ct. 2546, 2564–65, 115 L.Ed. 2d 640 (1991); *Marek v. Singletary,* 62 F.3d 1295, 1301–02 (11th Cir. 1995).

*Cortes v. Gladish*, 216 Fed. App'x. 897, 899 (11th Cir. 2007).

### C.  Standard for Ineffective Assistance of Counsel

"In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. "Under the 'performance' prong, the defendant must show that counsel's performance 'fell below an objective standard of reasonableness.'" *King v. U.S.*, 250 F. App'x. 930, 932 (11th Cir. 2007) (citing *Strickland*, 466 U.S. at 688). Under the 'prejudice' prong, the defendant must show that counsel's deficient performance prejudiced the defendant and that, "but for the attorney's error, the outcome of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. *See Strickland,* 466 U.S. at 688. The petitioner must establish that

8

particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1313, 1314 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987); *see also Strickland,* 466 U.S. at 686 (stating that petitioner must show "counsel's representation fell below an objective standard of reasonableness", which means that counsel's performance was unreasonable "under prevailing professional norms. . . considering all of the circumstances").

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler,* 218 F.3d at 1314 (11th Cir. 2000). When assessing ineffective assistance of counsel claims, the court's role is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690) (internal quotation marks omitted). "Intensive scrutiny and second-guessing of attorney performance are not permitted." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

**D.  Standard for Ineffective Assistance of Appellate Counsel**

*Strickland* also applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). Under the performance prong, appellate counsel is not required "to raise every non-frivolous issue." *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991).

Effective advocates can "winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id.* at 1331 (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). Further, "even though a non-appealed issue might have been successful, the appellate advocacy ha[s] to be judged in its entirety" *Id.* (discussing *Smith v. Murray*, 477 U.S. 527 (1986)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith*, 528 U.S. at 288 (citation omitted).

Under the prejudice prong, "[a]ppellate counsel's performance will be deemed prejudicial only if [the Court] finds that 'the neglected claim would have a reasonable probability of success on appeal.'" *Farina v. Sec'y, Florida Dep't. of Corr.*, 536 Fed. App'x. 966, 979 (11th Cir. 2013) (quoting *Heath*, 941 F.2d at 1132).

### III.      ANALYSIS

Initially, Respondent concedes that the Petition is timely. [DE 14 at 9]. Because Respondent has waived this statute of limitations defense, the Court need not determine whether the waiver is accurate. *See* 28 U.S.C. § 2244(d)(1)-(2); *Wood v. Milyard,* 566 U.S. 463, 473 (2012) (citing *Day v. McDonough,* 547 U.S. 198, 210-11 (2006)). Thus, the Petition is timely.

**A. Ground One: Whether the state court violated Petitioner's due process rights when it denied her request to present her objective entrapment defense to the jury.**

As an initial matter, the Court finds that Petitioner has properly exhausted Ground One as Petitioner raised this ground to the state trial court, the state appellate court, and even the United States Supreme Court. *See* DE 14-2, Ex. 16; DE 14-3, Ex. 22; DE 14-3, Ex. 35; DE 14-4, Ex. 46.

Plaintiff explains that the trial court denied her request to present an objective entrapment defense to the jury. [DE 4-1 at 20]. Next, on appeal, Petitioner describes how the appellate court agreed with the trial court finding that "objective entrapment is a matter of law for the court" and that Petitioner had no constitutional right to present this defense. *Id.* at 21; *Dippolito*, 275 So. 3d

10

at 659. Petitioner argues that this denial "is contrary to and/or constitutes an unreasonable application of clearly established federal law." [DE 4-1 at 21]. Petitioner asserts that the error "resulted in [Petitioner] being deprived of her right to present a complete defense to the charged crime and, as a result, a due process violation occurred." *Id.* at 22.

In response, Respondent maintains that Petitioner does not have the constitutional guarantee to present her entrapment defense. [DE 14 at 13]. Further, Respondent asserts that the trial and appellate courts correctly rejected Petitioner's entrapment theory under state standards. *Id.* at 13–17. Lastly, Respondent contends that Petitioner cannot show that her trial was fundamentally unfair. *Id.* at 18.

In reply, Petitioner concedes that the U.S. Supreme Court has not specifically recognized the right for a defendant to present an objective entrapment defense. [DE 16 at 2]. However, Petitioner asserts that the state court still violated her due process right to present a defense. *Id.* Petitioner further maintains that *Bradley v. Duncan*, 315 F.3d 1091 (9th Cir. 2002), supports her position and that "Respondent's evasion of the *Bradley* decision must not go unnoticed." [DE 16 at 2–3].

Here, the inquiry is straightforward. The Court may only ask whether the state court unreasonably applied a Supreme Court holding, *Williams*, 529 U.S. at 412, and as Petitioner concedes, the Supreme Court has never held that a defendant has the due process right to present an objective entrapment defense. [DE 4-1 at 2]; *United States v. Russell*, 411 U.S. 423, 433 (1973) (noting that the entrapment defense is "not of constitutional dimension"); *Sairras v. Florida Dep't. of Corr.*, 496 Fed. App'x. 28, 35 (11th Cir. 2012) ("It is well-settled that the defense of entrapment is not of constitutional dimension.") (citing *Russell*, 411 U.S. at 433); *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011) ("We have never applied the outrageous government conduct

11

defense [i.e., objective entrapment] and have discussed it only in dicta."). "The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law." *Reese v. Sec'y, Florida Dep't. of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) (citing *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].") (internal quotation marks and citation omitted). Thus, Ground One can be denied on this basis alone.

However, the Court will continue to address all of Petitioner's arguments to ensure a complete record. Petitioner states that "[t]he appellate court cited *Gaudin*, 515 U.S. at 511, in support of the notion that a trial judge can supplant the jury in resolving factual disputes underlying a criminal defendant's affirmative defense." [DE 4-1 at 22]. Petitioner goes on to claim that "*Gaudin*, however, held that a defense that presents a mixed question of law and fact must be presented to the jury." *Id.* The Court has reviewed both the state appellate decision and *Gaudin* and finds that Petitioner mischaracterizes their holdings. *Gaudin* held, which the appellate court correctly stated, that "[t]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime of which he is charged[.]" *United States v. Gaudin*, 515 U.S. 506, 511 (1995). Further, *Gaudin* did find that a mixed issue of law and fact should have been presented to the jury, but this mixed issue involved an *element* of the charged offense, not an *affirmative defense*. *Id.* at 511–15. Thus, *Gaudin* does not clearly establish that Petitioner's alleged "mixed issue" objective entrapment defense needed to be presented to the jury. Clearly, elements of a criminal offense are much different than affirmative defenses to a charged criminal offense.

Therefore, this argument is rejected.

Petitioner also asserts that the logic of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), apply. However, rather than determining what might or might not be logical in Petitioner's view, the Court instead must determine what is clearly established. And once again, *Apprendi* and *Alleyne* involve elements of an offense, not affirmative defenses. Elements of a crime and affirmative defenses cannot be conflated. Thus, the Court will not apply *Apprendi*'s and *Alleyene*'s logic. This argument is also rejected.

As relevant to Ground One, Petitioner has the clearly established right to have a "meaningful opportunity to present a complete defense" under the Due Process Clause. *California v. Trombetta*, 467 U.S. 479, 485 (1984). However, this is a very general "clearly established" constitutional rule, and the state court is entitled to an abundance of deference. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). Here, the Court will defer to the state court. As previously stated, there is no Supreme Court precedent that states that a defendant is denied their right to present a defense if the state court disallows them from presenting an entrapment affirmative defense. Because the cases cited by Petitioner fail to establish such precedent, the Court cannot find for Petitioner. *Wright,* 552 U.S. at 126; *Reese,* 675 F.3d at 1288.

Lastly, the Court will not ignore *Bradley*. In *Bradley*, the Ninth Circuit held that the state court's failure to instruct the jury on entrapment deprived the petitioner of due process and warranted habeas relief. 315 F.3d at 1095–101. In *Bradley*, law enforcement, while conducting an undercover narcotics operation, asked a man that they believed was going through drug withdrawal to "hook" them up with cocaine. *Id.* at 1094–95. The police dropped the man off in front of the petitioner. *Id.* at 1095. The man going through withdrawal then begged the petitioner to get him

drugs. *Id.* The petitioner purchased cocaine and delivered the cocaine to the undercover officers and the man suffering withdrawal. *Id.*

The Ninth Circuit first found that the state court's denial of the petitioner's requested entrapment instruction was an unreasonable determination under state law under § 2254(d)(2). *Id.* at 1096. The Ninth Circuit then held that the state court's failure to correctly instruct the jury on the entrapment defense resulted in a due process violation of the petitioner's right to present a defense. *Id.* at 1098–99. In support, the Ninth Circuit, like Petitioner, primarily relied on *Mathews v. United States,* 485 U.S. 58 (1988), and *Trombetta*, 467 U.S. 479. *Id.* The Ninth Circuit then granted habeas relief as the court found that the state court had unreasonably applied the law to the facts. *Id.* at 1100.

Here, Petitioner's reliance on *Bradley* is unpersuasive for many reasons. First, the Court must follow Supreme Court precedent, rather than non-binding circuit court decisions. 28 U.S.C. § 2254(d). Second, the Ninth Circuit has declined to follow *Bradley*'s logic in a similar circumstance. *Marquez v. Gentry*, 708 Fed. App'x. 924, 925 n.2 (9th Cir. 2018). Third, *Bradley* and Petitioner cite *Mathews* for the "general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews*, 485 U.S. at 63. However, their reliance on *Mathews* is misplaced. *Mathews* relies on federal common law and is not "compelled by the Constitution." *Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993); *Mathews*, 485 U.S. at 66. Lastly, *Bradley* and Petitioner ignore contrary Supreme Court precedent. As explained in *Gilmore v. Taylor*,

> Respondent offers a separate (but related) rationale he claims is supported by our cases … the jury instructions given at his trial interfered with his fundamental right to present a defense. We have previously stated that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532,

14

> 81 L. Ed. 2d 413 (1984)). But the cases in which we have invoked this principle dealt with the exclusion of evidence, see, *e.g.*, *Crane v. Kentucky*, *supra*; *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), or the testimony of defense witnesses, see, *e.g.*, *Webb v. Texas*, 409 U.S. 95, 93 S. Ct. 351, 34 L. Ed. 2d 330 (1972) (per curiam); *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). None of them involved restrictions imposed on a defendant's ability to present an affirmative defense. Drawing on these cases, respondent argues that the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process. But such an expansive reading of our cases would make a nullity of the rule reaffirmed in *Estelle v. McGuire*, *supra*, that instructional errors of state law generally may not form the basis for federal habeas relief.

508 U.S. 333, 343–44 (1993). Thus, reliance on *Bradley* is unconvincing and Petitioner's argument is again rejected.

Thus, the Court is bound by the Florida court's interpretation of state law. *See id.*; *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Even if the Court were to apply *Bradley*, the facts here are quite distinguishable. Petitioner argues that the BBPD's treatment of Mr. Shihadeh as well as the BBPD's participation in the COPS television show constitute objective entrapment. [DE 4-1 at 24–26]. This is a weak basis for an objective entrapment instruction. And, differing from *Bradley*, Mr. Shihadeh went to the BBPD *first* to tell the police that he had concerns that Petitioner wanted to kill her husband. *Id.* at 2. Further, the COPS television show only became involved with filming Petitioner's arrest *after* the crime was complete. Petitioner's desire, intent, and effort to have her husband murdered is readily apparent in the state court record. Petitioner's proffered entrapment defense is specious at best. Thus, for all the above reasons, Petitioner fails to establish that her trial was fundamentally unfair due to the denial of her asserted entrapment defense. Ground One is without merit and due to be denied.

**B. Ineffective Assistance of Counsel (Grounds Two–Six)**

Preliminarily, all of Petitioner's ineffective assistance of counsel claims, Grounds Two

through Six, are exhausted as they were raised in her Motion for Postconviction Relief [DE 14-4,

Ex. 53] and her appeal from the denial of that motion [DE 14-4, Ex. 57].

### i. Ground Two: Whether defense counsel provided ineffective assistance of counsel by opening the door for the State to introduce evidence that Petitioner previously attempted to poison her husband.

For background, the State had evidence that Petitioner told Mr. Shihadeh that she

previously tried to poison her husband before he called BBPD. [DE 4-1 at 27]. Defense counsel

fought against the admissibility of this evidence. *Id.* at 29. However, during trial, the judge ruled

that the poisoning evidence could be used for "impeachment purposes depending on what it is that

Mr. Shihadeh says." [Trial Transcript ('Tr.") Tr. Vol. 23, 3424:1–2]. The judge warned defense

counsel that if Mr. Shihadeh testified that he did not believe that Petitioner intended to kill her

husband, then the door may be opened for impeachment purposes. *Id.* at 3424:9–12. Defense

counsel asked Mr. Shihadeh whether he believed that Petitioner would kill her husband. *Id.* at

3467:13–16. Mr. Shihadeh responded in the negative. *Id.* The State was then allowed to ask Mr.

Shihadeh about the past poisoning attempt. *Id*. at 3568:17–24.

The state court found that defense counsel's performance was not deficient under

*Strickland*. [DE 14-4, Ex. 54].[6] In support, the state court stated that "[c]ounsel's decision to ask

Mr. Shihadeh if he believed [Petitioner] wanted to kill her husband was essential to the defense

argument that [Petitioner] had no intent to have her husband killed and that the police fabricated

---

[6] The state court's findings are taken from the State's Response to Defendant's Rule 3.850 Motion for Postconviction Relief [Ex. 54]. The trial court adopted the State's Response in its Order Denying Defendant's Motion for Postconviction Relief [Ex. 55], and the Fourth District Court of Appeal affirmed without opinion [Ex. 58]. Thus, the Court is relying on the State's Response [Ex. 54] as the relevant rationale. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale.") (citation omitted).

the crime for the COPS TV show." *Id.* at 13–14. The state court elaborated that "[e]ven though the question brought unfavorable testimony on cross, counsel's decision [] to go forward was the best strategy under the circumstances." *Id.* at 14. The state court also found that Petitioner failed to satisfy *Strickland*'s prejudice prong given the isolated impeachment and the "overwhelming evidence of guilt[.]" *Id.* at 210.

Petitioner argues that (1) the state court's determination is not entitled to deference because the record does not support that defense counsel's decision was strategic; (2) defense counsel performed deficiently by opening the door to the poisoning evidence; and (3) Petitioner was prejudiced by this performance. [DE 4-1 at 27–34]. In support, Petitioner cites an "affidavit" to show that it was not defense counsel's strategy to open the door to the poisoning evidence, but an unintended error. *Id.* at 30. Further, Petitioner claims that she can satisfy *Strickland*'s prejudice prong by pointing out that her second trial, which did not contain poisoning evidence, resulted in a hung jury. *Id.* at 34.

In response, Respondent asserts that defense counsel's performance was not deficient and that her prejudice argument rests on speculation given the ample evidence of Petitioner's guilt. [DE 14 at 22–31].

The Court will first determine the correct standard of review. "When a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them." *Cooper v. Sec'y, Dep't. of Corr.*, 646 F.3d 1328, 1353 (11th Cir. 2011) (quoting *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008)). However, Petitioner must rebut the state court's factual findings by clear and convincing evidence. *Id.* She does not do so.

To start, the reliability of Petitioner's "affidavit" is questionable. The "affidavit" states, in relevant part,

> During Mr. Rosenfeld's examination of Mr. Shihadeh, the trial court found that Mr. Rosenfeld's examination invaded the province of whether Ms. Dippolito intended to kill her husband. I did not believe that Mr. Rosenfeld's questioning did so … To the extent that any court found that Mr. Rosenfeld's examination went to Ms. Dippolito's intent to kill, this was categorically due to inadvertence and not part of our litigation strategy.

[DE 4-1 at 30]. However, there is no citation to where this affidavit is located in the record and Petitioner only provides an excerpt in her papers. *See id.* Also, it is hard to accept that the direct examination of Mr. Shihadeh was not meant to assess Petitioner's intent to kill. Defense counsel asked Mr. Shihadeh "[w]hen you first called the Boynton Beach Police Department, did you really believe Ms. Dippolito was going to kill her husband?" [Tr. Vol. 23, 3467:13–15].

Notwithstanding, there is ample evidence in the record to support the state court's determination. For instance, defense counsel mentioned numerous times during his opening statement that Petitioner did not intend to kill her husband.[7] Further, defense counsel promised in opening that Mr. Shihadeh was going to testify that Petitioner was not capable of killing her husband. [Tr. Vol. 15, 1975:7–10]. Then during trial, defense counsel was warned that if Mr. Shihadeh's testimony discussed Petitioner's intent, the door could be opened to the prior poisoning evidence. [Tr. Vol. 23, 3424:1–8]. Counsel was now stuck between a rock and a hard place; he could either deliver his promise in his opening statement or risk opening the door to the poisoning evidence. Even if the state court or this Court were to accept defense counsel's belated claim that they made a mistake, *Strickland* requires reviewing courts to judge counsel's performance from their perspective at the time and to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466

---

[7] For example, defense counsel stated "[w]hat this is about is not Dalia Dippolito intending to kill Mike Dippolito[]" and "the evidence in this case is going to show you that not only did Dalia Dippolito never intend to have her husband killed." [Tr. Vol. 15, 1967:6–7, 1971:12–14].

U.S. at 689; *see also Richter*, 562 U.S. at 109–10 ("After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland,* however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.") Thus, when viewing this evidence from Petitioner's trial, the state court's determination is reasonable.

Affording the state court deference, this Court may only ask whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. As elaborated by the state court, there is a reasonable argument to be made that defense counsel's performance was not deficient.

Alternatively, Petitioner fails to meet her burden in showing the state court unreasonably applied *Strickland*'s prejudice prong. The state court listed the other evidence that proved Petitioner's guilt. This evidence included "texts, audio and video of [Petitioner] planning and hiring a hitman to shoot and kill her husband with a firearm she purchased for that purpose." [DE 14-4, Ex. 54 at 15]. Further, defense counsel even conceded at trial that there was already a mountain of other evidence, besides the poisoning allegation, that Petitioner intended to kill her husband.[8] Further, defense counsel reaffirmed on redirect that Mr. Shihadeh did not believe that Petitioner was going to poison her husband. [Tr. Vol. 23, 3623:1–3].

---

[8] Specifically, defense counsel stated,

> There's been a mountain of evidence in this case, already presented by the state, that Ms. Dippolito not only had a clear and overt motive to kill her husband but that she had actually done a lot of things to have her husband, for example, put in jail, like planting, allegedly planting drugs in his car. We've got the information about Larry.

> The jury has already heard a mountain of evidence that Ms. Dippolito not only wanted to kill her husband, allegedly had a motive to kill her husband, but had actually talked to somebody else about killing her husband.

Notwithstanding, Petitioner expects this Court to find that the state court unreasonably applied *Strickland*'s prejudice prong because her second trial, without the poisoning evidence, resulted in a hung jury. [DE 4-1 at 34]. However, Petitioner speculates why her second trial resulted in a hung jury. "This kind of speculation is insufficient to carry the burden of a habeas corpus petitioner." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (internal quotation marks and citation omitted).

Therefore, for the reasons given above, the state court's determination is supported by the record, entitled to deference, Petitioner fails to meet her burden, and Ground Two should be denied.

### ii. Ground Three: Whether defense counsel provided ineffective assistance of counsel by failing to request a limiting instruction after the introduction of the poisoning evidence for impeachment purposes.

The state court found that defense counsel was not ineffective for failing to request a limiting instruction to limit the poisoning evidence for impeachment purposes. [DE 14-4, Ex. 54 at 20]. The state court concluded that "[a] limiting instruction at that time would have only drawn more attention to the poisoning evidence that the defense fought to have excluded." *Id.* The state court further found that Petitioner did not establish prejudice under *Strickland*. *Id.* Even though the prosecutor mentioned the poisoning evidence during closing for the truth of the matter asserted, the trial court instructed the jury to disregard the poisoning comment upon defense counsel's objection. *Id.* Further, in support, the state court points to the overwhelming evidence of guilt. *Id.* at 20–21.

Petitioner first argues that the Court should not afford deference to the state court's decision. [DE 4-1 at 35–37]. In support, Petitioner claims the state court unreasonably determined

---

[Tr. Vol. 23, 3413:13–25].

the facts in evaluating why defense counsel did not request a limiting instruction when the poisoning evidence was introduced and when the State referred to the poisoning evidence for the truth of the matter asserted in the State's rebuttal closing argument. *Id.* In support, Petitioner reiterates defense counsel's efforts to exclude the poisoning evidence and that "[i]t logically follows that defense counsel would have wanted to limit the damage[.]" *Id.* at 36. Further, Petitioner relies on *McGhee v. State*, 307 So. 3d 815 (Fla. 5th DCA 2020), to show that defense counsel performed deficiently. *Id.* at 37–39. Lastly, Petitioner reiterates similar arguments as made under Ground Two to show that she was prejudiced. *Id.* at 39–40.

First, Petitioner fails to establish by clear and convincing evidence that the state court made an unreasonable determination in light of the evidence. *See Cooper*, 646 F.3d at 1353. Considering Petitioner's assertion and the facts of this case, it also "logically follows" that after attempting to keep the poisoning evidence out, defense counsel would not want the jury to hear any mention of it again. Even after the poisoning evidence was used in the State's rebuttal closing, the same argument applies.[9]

Convincingly, courts in this circuit and others have recognized that the decision not to request a limiting instruction is generally a reasonable strategic decision. *See Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1534 (11th Cir. 1990), *superseded in non-relevant part by statute as stated in Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405 (11th Cir.1998) ("Lawyers frequently choose for strategic reasons not to request limiting instructions."); *United States v. Barnes*, 586 F.2d 1052, 1059 (5th Cir. 1978) ("Counsel may refrain from requesting an instruction in order not to emphasize potentially damaging evidence and for other strategic reasons. We decline to second guess counsel's decision.") (citations omitted); *United States v. Myers*, 917 F.2d

---

[9] Indeed, when the State mentioned the poisoning evidence in its rebuttal close, defense counsel objected, and the trial court instructed the jury to disregard. [Tr. Vol. 24, 3892:9–22].

1008, 1010 (7th Cir. 1990) ("You can't instruct 'Do not draw inference *X*' without informing the jurors that *X* is one possible conclusion from the evidence. To tell the jurors not to do something is to ensure that they will do it, at least for a while … [R]easonable persons may differ about whether the good such an instruction does with a thoughtful juror will outweigh the harm it can do by fastening attention on a link that may have been overlooked or forgotten."). Thus, the state court is entitled to deference.

Additionally, for similar reasons, the state court did not unreasonably apply *Strickland* when it determined that defense counsel did not perform deficiently. There is a reasonable argument to be made that defense counsel satisfied *Strickland*. *See Richter*, 562 U.S. at 105. As stated previously, defense counsel may have wanted to limit the jury's exposure to the poisoning evidence that they fought so hard to exclude. *See Sherman*, 891 F.2d at 1534; *Barnes*, 586 F.2d at 1059; *Myers*, 917 F.2d at 1010.

Moreover, the Court is unpersuaded by Petitioner's reliance on *McGhee*. *McGhee* relies on state law and procedures. Petitioner, almost verbatim, raised the same reliance on *McGhee* in her motion for postconviction release [DE 14-4, Ex. 53 at 14–17] and in her appeal [DE 14-4, Ex. 57 at 31–39]. However, both courts did not accept this argument. [DE 14-4, Ex. 55, Ex. 58]. Therefore, this Court is bound by their interpretation. *Herring v. Sec'y, Dep't. of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (internal quotation marks and citation omitted).

Alternatively, Petitioner fails to show that the state court unreasonably applied *Strickland*'s prejudice prong for the same reasons stated under Ground Two. For all the above reasons, Ground Three should be denied.

### iii. Ground Four: Whether defense counsel provided ineffective assistance of counsel by not calling forensic examiners and law enforcement officers to rebut the poisoning allegation.

In relevant part, the state court found as follows,

[T]he only evidence presented at trial about the "poisoning attempt" was limited to impeachment during the State's cross of Mohamad Shihadeh, after he testified on direct that he did not believe Defendant intended to kill her husband. Nor was there any evidence that police investigated the poisoning allegation by conducting a forensic examination of Defendant's computer. Thus, presenting any additional evidence on this topic would have drawn more attention to defendant's admission to Shihadeh that she previously attempted to poison her husband. Any evidence of this nature would have severely damaged the defense theory that the police investigated Defendant for solicitation of murder to have a good story for the COPs TV show and that she never intended to kill her husband.

Contrary to Defendant's claim here, under the totality of the record, the defense counsel was thoroughly prepared to address the poisoning evidence and strenuously argued throughout the proceedings to prevent its admission. The defense successfully prevented the State from presenting any direct evidence of Defendant's admission that she attempted to poison her husband. When it became evident that the testimony would be admitted for impeachment, counsel's excellent redirect put the defense theory back on track.

[DE 14-4, Ex. 54 at 21].

Petitioner first argues that the state court should not be afforded deference because it unreasonably determined the facts. [DE 4-1 at 41–43]. Petitioner points to statements made by defense counsel where counsel stated they were not prepared to address the poisoning allegation if it were admitted. *Id.* at 43. Therefore, Petitioner argues that the state court unreasonably determined that defense counsel was "prepared to address the poisoning evidence" and made a strategic decision. *Id.* Petitioner goes on to assert that defense counsel performed deficiently because defense counsel could have called forensic examiners to "establish that law enforcement searched [Petitioner's] computer and found no evidence that she searched the internet for ways to poison her husband." *Id.* at 44. Petitioner relies on similar arguments stated under Ground Two to claim that she was prejudiced. *Id.* at 44–45.

First, the state court did not make an unreasonable determination in light of the facts at trial. *See Cooper*, 646 F.3d at 1353. While defense counsel may have asserted that they were not prepared to address the poisoning evidence when trying to keep it out, they became prepared to address it as evidenced by defense counsel's re-direct examination of Mr. Shihadeh. [Tr. Vol. 23, 3623:1–12]. Defense counsel even told the trial court that they were prepared to call a forensic analyst to rebut the poisoning allegation. *Id.* at 3569:4–6. Therefore, Petitioner does not meet her burden in showing that the state court made an unreasonable determination of the facts in light of the evidence.

Second, for similar reasons, the state court did not unreasonably apply *Strickland*'s performance prong "given the strong presumption that counsel's decisions might be considered sound trial strategy[.]" *Stoddard v. Sec'y, Dep't of Corr.*, 600 Fed. App'x. 696, 708 (11th Cir. 2015) (citing *Richter,* 562 U.S. at 105–06 and *Strickland,* 466 U.S. at 689–91). Defense counsel competently examined Mr. Shihadeh to rebut the poising allegation. [Tr. Vol. 23, 3623:1–12]; *see also Richter,* 562 U.S. at 111 (noting cross-examination rather than calling a rebuttal witness is sufficient in many instances and that "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy"). Moreover, defense counsel told the trial court that they were going to now call a forensic analyst to rebut the poisoning allegation, but the court warned that it was not sure it would allow defense counsel to do so. *Id.* at 3569:4–12. It is therefore a reasonable argument that defense counsel would rely on cross-examination, rather than calling forensic analysts or law enforcement officers, when 1) it was not guaranteed that they would be allowed to do so, and 2) when it would highlight the poisoning evidence to the jury.

Even assuming defense counsel's performance was deficient, which it was not, Petitioner has not shown that the state court unreasonably determined that she was not prejudiced. Petitioner "bears a heavy burden of establishing prejudice based on the failure to call witnesses 'because often allegations of what a witness would have testified to are largely speculative.'" *Stoddard*, 600 Fed. App'x. at 709 (quoting *Sullivan v. DeLoach,* 459 F.3d 1097, 1109 (11th Cir. 2006)).

Petitioner claims that forensic examiners and law enforcement officers could have testified that they searched Petitioner's computer "and found no evidence that she searched the internet for ways to poison her husband" and that they "found no evidence to substantiate the poisoning allegation." [DE 4-1 at 44]. While, in Petitioner's view, this evidence may have been helpful, she does not show that the likelihood of a different result is "substantial." *Richter,* 562 U.S. at 112. Additionally, in light of the evidence and Petitioner's speculative arguments, she fails to show prejudice for the same reasons stated under Ground Two. For all these reasons, Ground Four should be denied.

> iv.   **Ground Five: Whether defense counsel was ineffective by failing to object to the State's rebuttal closing argument**.

Petitioner asserts that the state court unreasonably applied *Strickland* when it found that Petitioner was not denied effective assistance of counsel when her counsel failed to object to the following statement made in the State's rebuttal closing argument:

> [Defense counsel] keep[s] talking about how horrible this investigation is. There's a mountain of evidence in this case, a mountain. And it doesn't matter how much you look at, whether you look at a little bit of it or you look at every piece of it, it all comes back to one thing, [Petitioner] is as guilty as anybody has ever been in a criminal courtroom – right there. It doesn't get any better than this. It's like Old Milwaukee, it doesn't get any better.

[DE 4-1 at 47–48]; [Tr. Vol. 24, 3898–99]. Petitioner argues that this comment is improper under *United States v. Young*, 470 U.S. 1 (1985), and the state court thus unreasonably applied

*Strickland*'s deficient performance prong. [DE 4-1 at 48]. Further, Petitioner claims the state court "unreasonably found no prejudice" as "[t]he state court's prejudice determination failed to accept the impropriety of the state's argument" and the "improper argument rendered [Petitioner's] conviction 'fundamentally unfair.'" *Id.* at 49.

The state court found that the prosecutor's "remarks were not improper, but reasonable inferences taken from the evidence presented at trial." [DE 14-4, Ex. 54 at 23]. Further, the state court found that the "remarks were also fair reply to the defense arguments" made in the defense's closing. *Id.* In closing, defense counsel argued that Petitioner "was a victim of domestic violence[,] that she was not serious about having her husband killed and that police manufactured the crime for the COPS TV show." *Id.* The state court also found that Petitioner was not prejudiced under *Strickland* due to the "overwhelming evidence" of guilt. *Id.*

*Young* generally states that it is improper for a prosecutor to interject "personal beliefs into the presentation of the case." 470 U.S. at 8. However, the prosecutorial statements made here are distinguishable from *Young*. In *Young*, the prosecutor stated, "[y]ou can look at the evidence and you can remember the testimony, you remember what [the witnesses] said and what [respondent] admitted they said. *I think it's a fraud.*" 470 U.S. at 5 (emphasis added and citation omitted). Contrarily here, in context, the prosecutor does not state that they think Petitioner is guilty but was reminding the jury that there is a "mountain of evidence" that shows she is guilty. "Such a comment is not outside the scope of proper closing arguments made regarding the valid conclusions that could be drawn from the evidence presented." *Crenshaw v. Sec'y, Florida Dep't of Corr.*, No. 16-17735-D, 2017 WL 6761058, at *7 (11th Cir. Oct. 18, 2017) (citing *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984); *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983), *on reh'g*, 736 F.2d 1480 (11th Cir. 1984)).

26

Alternatively, the state court makes a reasonable argument that the comments are a fair reply to the defense's closing argument. Notably, the comments Petitioner takes issue with were made in the State's rebuttal closing. Strikingly, defense counsel began their closing argument by stating that the "investigation by the Boynton Beach Police Department [] had nothing to do with justice" as the BBPD was more concerned with its "desire to have fame" and "its desire to script a good television show[.]" [Tr. Vol. 24, 3792–3793]. "A court could reasonably find no performance violation because the remark fell within the 'doctrine of fair reply,' which recognizes that a 'prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel.'" *Holland v. Florida*, 775 F.3d 1294, 1318 (11th Cir. 2014) (quoting *United States v. Hiett,* 581 F.2d 1199, 1204 (5th Cir.1978)); *see also Young*, 470 U.S. at 11–13 (explaining the doctrine of fair reply).

Therefore, the state court made a reasonable argument that defense counsel's performance met *Strickland*'s performance prong under *Young*.

Nevertheless, Petitioner's argument that the state court unreasonably applied *Strickland*'s prejudice prong is unavailing. Considering the evidence in this case, as stated in Ground Two, the likelihood that the trial court would have found the comment to be proper, as reasoned above, and the state court's instruction that the attorneys' closing argument is not evidence [Tr. Vol. 24, 3737:20–24], is it reasonable to find that Petitioner was not prejudiced. *See United States v. Bailey*, 123 F.3d 1381, 1402 (11th Cir. 1997) ("[A]ny possible prejudice to [defendant] resulting from the prosecutor's closing argument was cured by instructions from the district judge that the lawyers' arguments were not evidence and that the jury was to decide the case solely on the evidence presented at trial."). For all the above reasons, Ground Five should be denied.

### v.     Ground Six: Whether relief must be afforded due to cumulative error.

Petitioner asserts that if none of her prior claims of ineffective assistance of counsel rose to the required level of prejudice, "the cumulative effect of defense counsel errors did." [DE 4-1 at 50].

The Court "address[es] claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't. of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (citation omitted).

Because the Court found that all of Petitioner's ineffective assistance of counsel claims fail, Petitioner's cumulative error argument is without merit. *Id.* ("[N]one of [Petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate."). For all the above reasons, Ground Six should be denied.

## C.  Ineffective Assistance of Appellate Counsel (Grounds Seven–Ten)

Initially, Petitioner fully exhausted her ineffective assistance of appellate counsel claims, Grounds Seven through Ten, as they were raised in her Petition Alleging Ineffective Assistance of Appellate Counsel [DE 14-4, Ex. 49].

Further, Petitioner's Petitioner Alleging Ineffective Assistance of Counsel was denied without opinion. [DE 14-4, Ex. 52]. However, "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't. of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002) (citations omitted). This Court's job is to "determine what arguments…could have supported[] the state court's decision[.]" *Richter*, 562 U.S. at 102. Petitioner must still show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

Under each ineffective assistance of appellate counsel ground, Petitioner asserts that "[t]he state court's denial is (1) contrary to, or involved an unreasonable application of, the *Strickland* standard and (2) based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." [DE 4-1 at 57, 60, 65, 66]. However, Petitioner's arguments are without merit.

> **i. Ground Seven: Whether appellate counsel was ineffective by failing to argue on direct appeal that the trial court abused its discretion by permitting the State to use peremptory strikes on three African American prospective jurors and a Hispanic prospective juror, where the record allegedly refutes the State's assertion of genuineness.**

The Florida Supreme Court in *Melbourne v. State*, 679 So.2d 759 (Fla. 1996) established the guidelines to be used when a race-based objection to a peremptory challenge is made:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.

> At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.

*Id.* at 764. At step 3, "the proper procedure requires the trial court to make an inquiry of the opponent of the strike. At that point, the opponent bears the burden of persuasion, to demonstrate why the reason was not genuine." *Landis v. State*, 143 So. 3d 974, 978 (Fla. 4th DCA 2014). Further, "Florida courts have repeatedly found that it can be racially discriminatory to exercise a peremptory challenge against a prospective juror in the minority where the proffered reason applies equally to a prospective juror in the majority." *Hunter v. State*, 225 So. 3d 838, 840 (Fla. 4th DCA 2017) (internal quotation marks and citation omitted); *see also Nowell v. State*, 998 So.2d 597, 605

(Fla. 2008) (finding error in accepting the state's proffered reason that was also "clearly applicable" to a similarly situated individual).

In the habeas context, a trial court's decision on the ultimate question of discriminatory intent is entitled to the presumption of correctness. *Hernandez v. New York*, 500 U.S. 352, 365–66 (1991). Such findings, which turn primarily on assessing credibility, may be set aside only if they are not fairly supported by the record and should be afforded great deference. *Purkett v. Elem*, 514 U.S. 765, 769 (1995); *Batson v. Kentucky*, 476 U.S. 79, 98 n.21 (1986).

Here, Petitioner's issues lie at the third step of *Melbourne*. Petitioner challenges the State's genuineness for various preemptory strikes against minority prospective jurors. Petitioner argues the State's race-neutral reason equally applies to similarly situated non-minority jurors. [DE 4-1 at 56]. However, Petitioner fails to meet her burden.

Petitioner challenges the genuineness of the State's use of preemptory strikes on four prospective jurors, either African American or Hispanic. [DE 4-1 at 51]. The Court will address each in turn.

First, the State struck prospective juror 1.7, an African American, because he used the word "execute" to describe prosecutors and then called police officers unreasonable. [Tr. Vol. 14, 1773:1–4]. Additionally, prospective juror 1.7 seemingly failed to mention family members with a criminal history. *Id.* at 1773:5–11. The state court then stated that it had listened to everything prospective juror 1.7 had to say and found a genuine basis for exercising the strike. *Id.* at 1775:3–7.

Second, the State struck prospective juror 1.9, an African American, because she stated that she was "the victim of domestic assault at the hands of her husband[]" and the defense was

30

alleging that Petitioner was also the victim of domestic violence. *Id.* at 1782:3–20. The trial court then found the State's reasons genuine based on the considerations of the case. *Id.* at 1785:16–22.

Third, the State struck prospective juror 3.7, an African American, because he said he "couldn't judge", that "all the cops do is look to win", and "this is not for me" when asked about being able to judge someone else. *Id.* at 1790:2–10. In explaining the genuineness of the State's reasons, the trial court pointed out how there were two African Americans that were still on the jury and that the trial court almost granted a for cause challenge for this prospective juror. *Id.* at 1791:15–22.

Fourth, the State struck prospective juror 1.8, a Hispanic, because she said police officers are "undertrained[]" and that she "may have an issue with undercover work." *Id.* at 1777:4–17. The trial court found the State's reasons to be genuine and "not a pretext for discrimination." *Id.* at 1780:20–24.

Petitioner claims that "the State's common use of its four preemptory strikes to eliminate three African-American prospective jurors and a Hispanic prospective juror involved their seemingly negative feelings towards police/prosecutors[]" and thus the State's explanation applied equally to unchallenged non-African American/Hispanic jurors who also expressed negative feelings about the police. [DE 4-1 at 54–55]. However, Petitioner fails to show by clear and convincing evidence that the state court's factual findings are unreasonable.

For example, the State struck prospective jurors 1.9 and 3.7 for reasons that had nothing to do with their feelings toward the police. Further, the stricken prospective jurors may have conveyed stronger feelings towards law enforcement than other unchallenged jurors. Undoubtedly, the trial court is in a better position to weigh, assess, and make credibility determinations as to each juror's statements towards the police when considering the State's genuineness. Lastly, the

trial court meticulously followed the *Melbourne* analysis for the challenged jurors. Thus, the trial court's factual findings of genuineness are, at least, fairly supported by the record. *See Purkett*, 514, U.S. at 769.

Moreover, there is a reasonable theory in which the state court could have found that Petitioner's claim failed to meet the *Strickland* standard. The Court has reviewed the transcripts from the trial court [DE 15] and the entirety of the appellate record in this case. [DE 14-3, Ex. 35, 39]; [DE 14-4, Ex. 43, 46]. Plainly, there is a reasonable argument to be made that appellate counsel did not perform deficiently. Appellate counsel focused on the foremost issues presented during trial—the state court's denial of Petitioner's objective entrapment defense and the use of the poisoning evidence. Thus, there is an argument to be made that appellate counsel winnowed out weaker arguments and chose to focus on the issues that were the crux of the trial. *See Jones*, 463 U.S. at 752–53. Therefore, there is a reasonable argument to be made that supports the Fourth District Court of Appeal's summary denial.

Additionally, there is a reasonable argument to be made that Petitioner was not prejudiced. As stated above, the trial court followed *Melbourne* analysis and determined that each of the State's proffered reasons for striking prospective jurors 1.7, 1.9, 3.7, and 1.8 were genuine. Moreover, as stated, there is a reasonable argument to be made that the State's proffered reasons were not equally applicable to other unchallenged, non-African American/Hispanic jurors. Therefore, there is a reasonable argument that the trial court's decision was not clearly erroneous, and thus Petitioner would not have had a reasonable probability of success on appeal. *See Nowell*, 998 So. 2d at 602 (noting that the trial court's decision in this context should be affirmed unless it is clearly erroneous). For all these reasons, Ground Seven should be denied.

ii.   **Ground Eight: Whether appellate counsel was ineffective by failing to argue on direct appeal that the trial court abused its discretion by failing to replace a sleeping juror or, at the least, conduct/permit an investigation into juror misconduct.**

To start, the Court will address whether the trial court made an unreasonable determination of the facts in light of the evidence regarding the alleged sleeping juror. In Florida, "the decision of whether to replace or to retain a sleeping juror rests in the sound discretion of the trial court." *Bullis v. State*, 734 So. 2d 463, 464 (Fla. 5th DCA 1999) (citing *Ivey v. State,* 132 Fla. 36, 180 So. 368 (1938)).

During trial, Petitioner moved to replace a juror who she alleged was sleeping with an alternate or to allow additional investigation. [DE 4-1 at 58–59]. Petitioner attached affidavits from individuals who stated that they saw the challenged juror sleeping. *Id.* The trial court stated "I have personally observed this particular juror. She has not been sleeping." [Tr. Vol. 24, 3786:11–12]. The trial court went on to state "I know you've got these affidavits. This is based on my observations of her. She has been attentive. She's leaned in listening to testimony at times. She has not been sleeping." *Id.* at 3786:13–16.

Now, Petitioner is reasserting the same argument and relying on the same affidavits that the trial court already considered. *See* DE 14-3, Ex. 30. Simply put, Petitioner fails to overcome the trial court's factual findings by clear and convincing evidence.

Again, Petitioner also fails to show that there is no reasonable argument that the state appellate court could have relied on to deny her *Strickland* claim. There is a reasonable argument that appellate counsel performed sufficiently, as stated under Ground Seven. Further, there is a reasonable argument that Petitioner's appeal would not have been successful. The state appellate court could reasonably find that the trial court did not abuse its discretion, given the trial court's personal observations of the challenged juror.

33

Therefore, Ground Eight is meritless and should be denied.

> **iii.    Ground Nine: Whether appellate counsel was ineffective by failing to argue on direct appeal that the trial court erred by denying Petitioner's motion to suppress based on Florida's wiretap statute.**

Under Ground Nine, Petitioner asks this Court to determine that the trial court, and the Fourth District Court of Appeal by its silent agreement, got a purely legal issue of state law wrong. Petitioner seeks a finding from this Court that Florida's wiretap statute equally applies to video recordings. [DE 4-1 at 63]. However, this Court will not fulfill Petitioner's request. *See Estelle*, 502 U.S. at 67–68; *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017). There is a reasonable interpretation of *Strickland* that the Fourth District Court of Appeal could have relied on, i.e., because video evidence would not have been suppressed under Florida's wiretap statute, counsel was not ineffective for not raising this argument on direct appeal. Therefore, Ground Nine should be denied.

> **iv.    Ground Ten: Whether appellate counsel was ineffective for failing to argue on direct appeal that a comment made during the State's rebuttal closing argument, as stated under Ground Five, deprived Petitioner of a fair trial.**

Ground Ten is meritless for the same reasons stated under Ground Five. Thus, Ground Ten should be denied.

## IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b) to the Rules Governing § 2254 Proceedings.

After a careful review of the record, the Court finds that Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may [be] issued[d] . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised in the Petition are without merit, Petitioner cannot satisfy the *Slack* test. Upon consideration of the record, the District Judge should deny a certificate of appealability.

## V.     RECOMMENDATION TO THE DISTRICT JUDGE

A very careful review of the entire record establishes that Petitioner's claims are meritless and due to be denied for the reasons stated above. No evidentiary hearing is necessary or required. The Petition fails to establish any grounds for relief. Accordingly, the undersigned United States Magistrate Judge recommends that the United States District Judge **DENY** Petitioner's Petition [DE 1] and **DENY** a Certificate of Appealability.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir.

R. 3-1 (2016).

  **RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern

District of Florida, this 22nd day of April 2025.


WILLIAM MATTHEWMAN
United States Magistrate Judge